IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DOUGLAS R. BENTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 2:07CV643SRW |
| | ) (WO) |
| MICHAEL J. ASTRUE, Commissioner | ) |
| of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OF OPINION**

Plaintiff Douglas R. Benton brings this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits and supplemental security income under the Social Security Act. The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c). Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be reversed.

**BACKGROUND**

Plaintiff worked as a hotel desk clerk/auditor from 1991 until 2004. He was first diagnosed with AIDS in November 1998, when he was admitted to the hospital with "[b]ilateral pneumonia presumed secondary to pneumocystis carinii." He was also diagnosed with weight loss secondary to AIDS. (R. 205). On September 9, 1999, plaintiff weighed 184 pounds. (R. 160). Treatment records from Montgomery AIDS Outreach clinic show

that, in the spring and summer of 2004, plaintiff still had an AIDS diagnosis and his weight had dropped to approximately 150 pounds. (R. 144-56). Plaintiff testified that he maintained a weight of "between 180 and 225" for four or five years, and that over the two year period preceding his administrative hearing, his weight dropped to "140 to 145." (R. 337).

On August 20, 2004, plaintiff filed applications for disability insurance benefits and supplemental security income, alleging that his illness of HIV/AIDS limits his ability to work because he suffers from weight loss, depression, and anemia, does not rest well, and he "stay[s] tired." (R. 75-76). Plaintiff apparently submitted no medical evidence in support of his claim for benefits and, on September 22, 2004, the claim was denied at the initial administrative level. (R. 34-35). On November 19, 2004, plaintiff requested a hearing on his claim. In a disability report filed on the same day, he reported that he had been diagnosed with avascular necrosis, and that it caused him to suffer pain in his left hip. (R. 109).

Montgomery AIDS Outreach treatment records for November 17, 2004, note that plaintiff's X-ray showed avascular necrosis of the left femoral head. (R. 166). Plaintiff sought treatment from orthopedic specialists who diagnosed bilateral avascular necrosis after reviewing plaintiff's MRI. On April 13, 2005, Dr. Keith Granger performed a bilateral hip core decompression on the plaintiff. Six weeks later, plaintiff rated his left hip pain at 8 on a scale of ten, and indicated that the pain in his right hip had improved slightly. An x-ray revealed "some collapse of the left femoral head," and, on June 27, 2005, Dr. Granger performed a left total hip replacement on the plaintiff. Dr. Granger's pre- and post-operative diagnoses were "HIV positive," and "[a]vascular necrosis with severe degenerative joint

disease of bilateral hips, left worse than right." In a follow-up visit on August 23, 2005, plaintiff reported that he was "95% better," and the treatment notes indicate that he had "[n]o real complaints." (Exhibits 5F, 6F). Montgomery AIDS Outreach records show that plaintiff's weight was as low as 140 in the summer of 2005 and that, on November 9, 2005, he weighed 145 pounds. (Exhibits 3F and AC-1).

On November 30, 2005, an ALJ conducted an administrative hearing. At the hearing, plaintiff testified that he worked as a hotel desk clerk until November of 2004. He indicated that it is difficult for him to sit for long periods of time and that he now cannot walk as he was required to do at the motel job because of pain in his hip. He is able to sit for about an hour before he must stand up and move around. He can stand for twenty to thirty minutes before he has to sit. He has been told to use a cane; he uses it sometimes, but not always. He probably could not walk the length of a football field without stopping. He can lift "probably ten to 15" pounds occasionally. He is unable to squat or bend down like he used to before his hip operation. He lives with a friend who has four children – four-year old twins, a seven year old and a twelve year old. He takes care of the children at the house. He watches the twins during the day, but does not pick them up. His friend is an artist who works with metal – he helps her by holding things while she welds and by cleaning up. Plaintiff does not do any household chores or yard work. He goes to Walmart "from time to time." He reads and occasionally plays computer games. He goes to church every Sunday. He drives "some." He first learned that he was HIV positive in 1998. From six to seven years before the hearing until two years before the hearing, he weighed between 180

and 225 pounds. At the time of the hearing, he weighed between 140 and 145. His weight loss was unintentional. He has diarrhea and dry mouth. For the latter, he drinks tea. For the diarrhea, he takes over-the-counter medication "[f]rom time to time." He gets tired more easily now. If he were to get really tired, he could fall and he does not need to fall now because of the problem with his hip. Before his surgery, his left hip pain ranged from six to ten on a scale of ten. Since his surgery, he experiences pain on an average level of three, but reaching a level of eight at least once a week. He has not noticed any pain in his right hip yet. He has taken medication for depression, but it did not work and his physician discontinued the medication. Plaintiff and his physician have discussed starting another medication, but in the year prior to the hearing, plaintiff was not on any medication for depression. (R. 318-44).

On December 5, 2005, plaintiff's friend Debbie Somma provided an affidavit for the record. She stated:

> [M]r. Benton does light work at my farm such as feeding my horses and maintaining their living quarter which normally takes about 6 hours a day.
>
> He also helps out with my 4 year old twins. He feeds them their breakfast and lunch, takes them to the park on occasion and entertains them.
>
> For these services, I provide for him health insurance which runs about $280.00 a month. I provide him with room and board, pay his medical bills and medication and every now and then give him a little spending money which averages about $20.00 a week. On days that he is not feeling well others that work for me will cover for him.

(R. 73).

The ALJ rendered a decision on February 24, 2006. The ALJ concluded that plaintiff suffered from the severe impairments of "HIV and status post left hip replacement." (R. 16).

He found that plaintiff's impairments, considered in combination, did not meet or equal the severity of any of the impairments in the "listings" and, further, that plaintiff retained the residual functional capacity to perform jobs existing in significant numbers in the national economy. Thus, the ALJ concluded that the plaintiff was not disabled within the meaning of the Social Security Act. On May 14, 2007, the Appeals Council denied plaintiff's request for review.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

The plaintiff challenges the Commissioner's decision, arguing that the case should be remanded: (1) with instructions to obtain a medical opinion regarding whether plaintiff's AIDS meets or equals the HIV listing, since no agency medical expert reviewed this case; (2) with instructions to obtain a medical source statement, since the record contains no functional assessment from any examining or treating physicians; (3) because the ALJ erred by failing to obtain testimony from a vocational expert; and (4) because the ALJ's credibility determination is not based on substantial evidence.

Upon review of the record, the court concludes that the Commissioner's RFC determination is not supported by substantial evidence.[1]  As noted above, the ALJ concluded that plaintiff is "positive for HIV" and "status post two left hip operations" and that these are severe impairments. (R. 16).  He further determined that plaintiff's testimony regarding the effect of his impairments is not fully credible. (R. 18-19).  Based on plaintiff's daily activities and giving plaintiff "the benefit of the doubt[,]" the ALJ determined that, while plaintiff can no longer perform his past relevant work, he retains the residual functional capacity to perform work at the full range of the sedentary exertional level.  (R. 19-20). Relying exclusively on the medical-vocational guidelines (the "grids"), he determined that there are a significant number of other jobs that plaintiff can perform.

However, the record contains no opinion from any medical source – examining or non-examining – regarding the effect of plaintiff's presently existing impairments on his

---

[1] In view of this conclusion, the court does not reach each of the specific arguments advanced by plaintiff.

ability to perform work related functions.[2]  In Ripley v. Chater, 67 F.3d 552 (5th Cir. 1995), the Fifth Circuit Court of Appeals addressed a case in which the record, like the present one, contained no medical source opinion regarding the plaintiff's functional limitations:

> Usually, the ALJ should request a medical source statement describing the types of work that the applicant is still capable of performing.  The absence of such a statement, however, does not, in itself, make the record incomplete.  In a situation such as the present one, where no medical statement has been provided, our inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record.
>
> The evidence that was available for review by the ALJ shows a four year history of surgery, medical examinations, and complaints of pain.  From this evidence and Ripley's testimony at trial, the ALJ concluded that Ripley was capable of performing sedentary work.  Based upon that finding, the ALJ applied the Medical-Vocational Guidelines and concluded that Ripley was not disabled.
>
> The ALJ is responsible for determining an applicant's residual functional capacity.  After considering the evidence, however, we conclude that the ALJ's determination that Ripley was capable of performing sedentary work was not supported by substantial evidence.  The record includes a vast amount of medical evidence establishing that Ripley has a problem with his back.  *What the record does not clearly establish is the effect Ripley's condition had on his ability to work.*  The only evidence regarding Ripley's ability to work came from Ripley's own testimony.

67 F.3d at 557 (footnotes omitted)(emphasis added).  The court declined the Commissioner's invitation to find that the medical reports discussing the extent of the plaintiff's injuries substantially supported the ALJ's finding.  The court reasoned, "[w]ithout reports from qualified medical experts, however, we cannot agree that the evidence substantially supports the conclusion that Ripley was not disabled because we are unable to determine the effects

---

[2] The ALJ noted and discounted a temporary restriction in activity imposed upon plaintiff's discharge after hernia repair surgery in June 2003.  (R. 19, 241).

7

of Ripley's conditions, no matter how 'small,' on his ability to perform sedentary work." Id. at 558 n. 27.

In this case, there is evidence of record that the plaintiff has been diagnosed by his Montgomery AIDS Outreach physicians with "wasting" and that he has unintentionally lost a significant amount of weight over a relatively short period of time. Additionally, at the time of the hearing, plaintiff remained under the care of an orthopedic surgeon for follow-up treatment after his left hip replacement. Although he testified at the hearing that he was not yet experiencing pain in his right hip, records submitted to the Appeals Council show that his physician prescribed Lortab on February 8, 2006 for plaintiff's complaints of right hip pain. (R. 304). Plaintiff testified that he gets tired more easily and that he cannot sit for extended periods of time. The evidence of plaintiff's daily activities upon which the ALJ relied to discount plaintiff's testimony is not inevitably inconsistent with these limitations. The evidence of record does not provide a basis for determining whether plaintiff's wasting would cause non-exertional functional limitations, such as fatigue, or exertional limitations precluding sedentary work. Similarly, the evidentiary record is insufficient to support a determination regarding whether plaintiff's hip impairment would cause any limitations, such as postural limitations or the requirement of a sit-stand option, that would preclude the full range of sedentary work. Like the Ripley court, this court is unable "[w]ithout reports from qualified medical experts . . . to determine the effects of [plaintiff's] conditions, no matter how 'small,' on his ability to perform sedentary work." Id.; see also Rodriguez v. Secretary of Health and Human Services, 893 F.2d 401, 403 (1st Cir. 1989)("Where the record is bereft

of any medical assessment of residual functional capacity, this court has found a lack of substantial evidence to support a finding that exertional impairments are not disabling, since the ALJ is not qualified to assess residual functional capacity on the basis of bare medical findings.")(citations omitted).

## CONCLUSION

Upon review of the record as a whole, the court concludes that the decision of the Commissioner is due to be reversed and this case remanded for further proceedings. A separate judgment will be entered.

DONE, this 10th day of September, 2008.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE